John Henry **SINGLETON, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 01–92–00064–CR, 01–92–00065–CR and 01–92–00066–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 4, 1994.

Charles Freeman, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Ernest Davila, Stuart Burns, Asst. Dist. Attys., Harris County, for appellee.

Before O'CONNOR, DUGGAN and HEDGES, JJ.

## OPINION

O'CONNOR, Justice.

John Henry Singleton, Jr., the appellant, appeals from two judgments revoking probation and a judgment of conviction. We affirm.

After the appellant pled "no contest" to an indictment charging him with auto theft, the trial court deferred a finding of guilt and placed him on four-years deferred adjudication probation on January 9, 1989. On September 29, 1989, upon the motion of the State, the trial court adjudicated the appellant guilty and assessed punishment of nine-years confinement (probated) and a $500 fine. On January 16, 1992, the appellant's probation was revoked for committing the offense of aggravated robbery on August 20, 1991. In cause number 01–92–00065–CR, the appellant appeals trial court cause 507684, the revocation of his probation.

After the appellant pled "no contest" to an indictment charging him with the felony offenses of theft and theft by receiving, the trial court found him guilty of theft by receiving, and assessed punishment at nine-years confinement (probated) and a $500 fine on September 29, 1989. On January 16, 1992, the appellant's probation was revoked for committing the offense of aggravated robbery on August 20, 1991. In cause number 01–92–00064–CR, the appellant appeals trial court cause 525072, the revocation of his probation.

After the appellant plead "not guilty" to an indictment charging him with the felony offense of aggravated robbery, a jury found him guilty as charged and assessed punishment at 50–years confinement and a $5,000 fine. In cause number 01–92–00066–CR, the appellant appeals trial court cause 607379, the conviction for aggravated robbery.

In all three appeals, the appellant objects to the trial court's jurisdiction based on violation of the federal Voting Rights Act. Additionally, in his appeal from the aggravated robbery conviction, he complains about the lack of randomness and fair cross section in the composition of the jury array and venire, the State's opening statement concerning the discovery of the complainant's watch, the

complainant's gesture toward his watch during his testimony, the admission of the complainant's hearsay testimony, and the State's closing argument.

## A.

### Factual Background

The complainant testified that on August 20, 1991, about 6:45 p.m., he was returning to his home on Beaver Tail in Houston, Texas. The weather was clear and it was still daylight. As he turned into his street, a cul-de-sac, he noticed a Mercedes leaving the area. He did not give it much thought, except to note that it was not one of his neighbors. He pulled into his driveway, opened the garage door with an electric garage door opener, and drove his car into the garage. He turned off the engine and opened the car door.

As he was getting out of his car, two men walked up and demanded his watch (a Rolex). The complainant testified he could see both their faces; he identified the appellant as one of the men. Just after demanding his watch, the man with the appellant grabbed the complainant's arm and tried to pull off his watch. The complainant pushed him away, kicked at him, and tried to get back in the car. Suddenly, a gun went off. The appellant, who had a gun, fired it. The complainant, thinking that the two would give up and leave, continued to struggle; everyone was shouting. The appellant's gun jammed, and he ejected two bullets. He then shot the complainant through the leg and up into his abdomen. The complainant gave them his watch and they left. The complainant stumbled over to his neighbor's house, and they called an ambulance.

Two witnesses, Roxann Spears Ogden and William J. Marshall, testified they saw two men behaving suspiciously in the vicinity of the complainant's neighborhood. Both identified the appellant as one of the men. Ogden testified she saw two men run from Beaver Tail onto Gessner and get into the back of a gray Mercedes. Ogden called the police on her car phone, and described the men, the car, and the license plate. Marshall testified he was driving down Gessner when he saw two men run across Gessner and get in a Mercedes sitting on the esplanade. He decided to follow the car. When a police officer turned in front of Marshall, Marshall signalled him and told him about the men in the Mercedes. He identified the appellant as one of the men.

The police officer followed the Mercedes and told the dispatcher that it was driving down Memorial at an unsafe speed, trying to get around traffic. Another officer in the area stopped the Mercedes just about the same time the first police officer drove up.

## B.

### The Voting Rights Act

■ In his sole point of error in cause numbers 01–92–00064–CR and 01–92–00065–CR, challenging the revocation of his probation for auto theft and theft by receiving, and in his second point of error in cause number 01–92–00066–CR,[1] challenging the judgment of conviction, the appellant contends the trial court committed reversible error by denying his objection to the trial court's jurisdiction based on violations of the federal Voting Rights Act.[2] He argues that the Texas electoral scheme of at-large election of judges is illegal.

That issue was resolved against the appellant by the Fifth Circuit Court of Appeals. *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 837 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994) (sitting en banc, the court concluded no violation of the Voting Rights Act was proved). Because the Fifth Circuit has found that the at-large election of trial judges in Harris County, Texas, does not violate the federal Voting Rights Act, we overrule the sole point of error in cause numbers 01–92–00064–CR and 01–92–00065–CR and the second point of error in cause number 01–92–00066–CR.

---

1. The appellant raises 38 points of error in cause number 01–92–00066–CR, numbered two through 39. There is no point of error one.

2. 42 U.S.C.S. § 1971(a) (Law. Co-op. 1986).

## C.

### The Array, Venire, and Jury

In cause number 01–92–00066–CR, the appellant contends the trial court erred (1) in denying his objection to, challenge to, and motion to discharge the array, (2) by denying his objection to the venire drawn from the afternoon array, and (3) by denying his objection to the jury as impaneled. (Points of error 3–11, 12–20, and 27–35). Under these points, the appellant's primary argument is that neither the array, venire, nor jury was randomly selected or reflected a fair cross section of the community, thus violating: (1) due course of law (TEX. CONST. art. I, § 19) (points 3, 12, and 27); (2) equal protection (TEX. CONST. art. I, § 3) (points 4, 13, and 28); (3) selection grounds (points 7, 16, and 31); (4) summons grounds under TEX.GOV'T CODE § 62.014 (points 8, 17, and 32); (5) the randomness requirement (points 9, 18, and 33); and (6) the plan provisions of TEX.GOV'T CODE § 62.011(b) (Vernon Supp.1994) (points 10, 19, and 34). The essence of the appellant's complaint is this: he has been denied an array that represents a fair cross section of Harris County, Texas, and the array violates the randomness requirement embodied in section 62.011(b) because people who receive a juror summons are allowed to call the district clerk's office and reset or reschedule their time for jury service. For purposes of discussion, we group together these arguments relating to randomness and the fair cross section requirement.

The appellant also claims the manner in which jury duty may be postponed (resetting or rescheduling jury service by telephone) violates the juror qualifications set by the legislature (TEX. CONST. art. XVI, § 19) (points 5, 14, and 29); the separation of powers (TEX. CONST. art. II, § 1) (points 6, 15, and 30); and the economic reason excuse provisions of TEX.GOV'T CODE § 62.110(c) (points 11, 20, and 35).

### 1. Fair cross section

■ The sixth amendment to the United States Constitution entitles every defendant to a petit jury drawn from a source fairly representative of the community.[3] *Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975); *see also Lockhart v. McCree,* 476 U.S. 162, 173, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137 (1986); *Duren v. Missouri,* 439 U.S. 357, 359–60, 99 S.Ct. 664, 666, 58 L.Ed.2d 579 (1979). The Texas Constitution provides the same protection as the federal constitution with regard to an impartial jury drawn from a source made up of a fair cross section of the community. *Marquez v. State,* 725 S.W.2d 217, 243 (Tex.Crim. App.1987).

■ There is no requirement that a petit jury actually chosen must mirror the community and reflect the various distinctive groups in the population. The only requirement is that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups, and thus fail to be reasonably representative. *Taylor,* 419 U.S. at 541, 95 S.Ct. at 703; *see also Teague v. Lane,* 489 U.S. 288, 292, 109 S.Ct. 1060, 1065, 103 L.Ed.2d 334 (1989) (Supreme Court declined to decide if the fair cross section requirement should be extended to the petit jury); *Lockhart,* 476 U.S. at 173, 106 S.Ct. at 1765 (describing the Eighth Circuit's application of the fair cross section requirement). Most recently, in *Holland v. Illinois,* 493 U.S. 474, 482–83, 110 S.Ct. 803, 808, 107 L.Ed.2d 905 (1990), the Supreme Court reiterated that the fair cross section requirement did not apply to the petit jury. *See Seubert v. State,* 787 S.W.2d 68, 70 (Tex.Crim.App.1990).

Because the fair cross section requirement does not apply to the petit jury, we overrule points of error 27, 28, 31, and 32.

■ To establish a prima facie violation of the fair cross section requirement, the defendant must show that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the communi-

---

3. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury of the State and district wherein the crime shall have been committed....*
U.S. CONST. amend. VI (emphasis added).

ty; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren,* 439 U.S. at 364, 99 S.Ct. at 668; *Weaver v. State,* 823 S.W.2d 371, 372–73 (Tex.App.—Dallas 1992, pet. ref'd).

■ The appellant's objection to, challenge of, and motion to discharge the arrays read as follows:

COMES NOW John Singleton ... and objects to and challenges the array(s) from which venire(s) in these causes are to be drawn, and moves this Honorable Court, pursuant to Chapter 35 of the Texas Code of Criminal Procedure; Chapter 62 of the Texas Government Code; and, Article I, Sections 3, 3a, 10, 13, 15, 19 and 29, Article II, Section 1, Article V, Section 10, and Article 16, Section 19, of the Texas Constitution, to discharge such array(s) of jurors summoned and order other jurors summoned in their stead. In support of this objection, challenge and motion, Accused shows:

## I.

That the array(s) from which the venire(s) in these causes are to be drawn (1) fails to comport with Section 62.011(b) of the Texas Government Code; (2) has both included and excluded prospective jurors in violation of Sections 62.014 and 62.110(c) of the Texas Government Code; and, (3) does not otherwise represent a fair cross-section of Harris County, Texas, with respect to African–Americans.

## II.

That data evincing allegations in paragraph I above has at all times been, and is presently, suppressed by this Honorable Court, other district courts and the District Clerk of Harris County, Texas, overwhelmingly non–African–Americans.

## III.

That behavior described in paragraphs I and II above was intentionally and knowingly designed to cause the officer summoning the jury to willfully summon jurors with a view to secure a conviction: particularly non–African–Americans who feel that non–African–Americans, like the complainants, peace officers and the State herein, are trustworthy truth-tellers; and, that African–Americans are untrustworthy liars and otherwise guilty until proved innocent.

The trial court overruled the appellant's objection, challenge, and motion. The appellant supported his objection, challenge, and motion by the affidavit of the appellant's defense counsel, sworn to before the deputy district clerk, which states:

My name is Charles Freeman. I am African–American lawyer for Accused in the above-entitled and -numbered cause. I have read the above and foregoing Accused's Objection to, Challenge of And Motion to Discharge Array(s) and hereby swear that each and every allegation of fact contained therein is absolutely true and correct based upon my personal knowledge.

We have reviewed the statement of facts from the January 8, 1992, pretrial hearing on the appellant's objection to, challenge of, and motion to discharge the array. There was no evidence presented that the representation of African–Americans in the venires from which petit juries are selected was not fair and reasonable in relation to the number of such persons in the community, nor was there any evidence that any such underrepresentation was due to systematic exclusion of African–Americans from the jury selection process. The appellant did not establish a prima facie violation of the fair cross section requirement. *See, e.g., Lopez v. State,* 437 S.W.2d 268, 270 (Tex.Crim.App.1968) (op. on reh'g) (there was not a scintilla of evidence to support appellant's contention that his race was discriminated against because a number of the panel from which his jury was drawn had been required to serve through delayed jury service); *Weaver,* 823 S.W.2d at 374 (appellant did not establish the first and second *Duren* prongs).

We overrule points of error 3, 4, 7, 8, 12, 13, 16, and 17.

## 2. Randomness requirement

On the recommendation of the district and criminal district judges of a county, the county commissioners court may adopt a plan for the selection of names of persons for jury duty with the aid of electronic or mechanical equipment instead of drawing the names from a jury wheel. TEX.GOV'T CODE § 62.011(a). Among other things, the plan must provide a fair, impartial, and objective method of selecting names of persons for jury duty with the aid of electronic or mechanical equipment. TEX.GOV'T CODE § 62.011(b)(3) (Vernon Supp.1994). Section 62.011 does not use the word "random." [4] However, the plan adopted by Harris County, which was introduced into evidence at the January 8, 1992, pretrial hearing, reads:

> The District Clerk shall cause the names on said Voter Registration Tapes to be *randomized* and recorded on another magnetic tape in a format determined by the District Clerk that will facilitate update of the "Prospective Juror Tape". This file or tape shall be known as the "Prospective Juror Tape".

(Emphasis added.)

■ Both section 62.110(a) of the Texas Government Code and article 35.03, section 1 of the Texas Code of Criminal Procedure provide that the court may hear a prospective juror's excuse and either release him or her completely or until another day of the term. Only the trial court has authority to excuse prospective jurors. *Neal v. State*, 689 S.W.2d 420, 424 (Tex.Crim.App.1984); *Stephenson v. State*, 494 S.W.2d 900, 906 n. 9 (Tex.Crim.App.1973). The county commissioners court is authorized to adopt a plan under which the court's designee may hear and determine an excuse and postpone jury service. TEX.GOV'T CODE § 62.110(b); TEX. CODE CRIM.P. art. 35.03, § 2. The evidence at the January 8 pretrial hearing showed that even though Harris County had not adopted such a plan, the district clerk's office regularly excuses prospective jurors and reschedules their jury service to another date.

■ The appellant complains that the policy of the district court's office thwarts the element of chance embodied in the statute, undermines the required randomness, and harmed him. Even if the procedures for selecting the array violate the statute, the appellant must show harm in order to warrant reversal. *Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App.1992); *Neal*, 689 S.W.2d at 424–25; *see also Jackson v. State*, 745 S.W.2d 4, 17 (Tex.Crim.App.1988) (appellant failed to demonstrate harm by showing he was forced to accept an objectionable juror as a result of the trial court's failure to comply with excuse provisions of chapter 35 of the Texas Code of Criminal Procedure). In *Lewis v. State*, 815 S.W.2d 560, 563 (Tex. Crim.App.1991), the Court of Criminal Appeals held that a successful challenge to a criminal conviction based on noncompliance with jury selection procedures set out in the Government Code or an adopted local government plan requires the appellant to establish that the noncompliance compromised the fairness of the trial. The appellant has not shown how the fairness of his trial was compromised.

We overrule points of error 9, 10, 18, 19, 23, and 24.

## 3. Separation of powers

■ According to the appellant, the above-described way in which Harris County reschedules prospective jurors who have been summoned violates the legislature's sole power to prescribe qualifications of petit jurors under TEX. CONST. art. XVI, § 19, and causes the judicial branch of government to unlawfully encroach upon the power of the legislative branch, citing TEX. CONST. art. II, § 1.

Article XVI, section 19 of the Texas Constitution provides:

> The Legislature shall prescribe by law the qualifications of grand and petit jurors; provided that neither the right nor the duty to serve on grand and petit juries shall be denied or abridged by reason of sex. Whenever in the Constitution the term "men" is used in reference to grand

---

4. The only statutory reference to "randomness" that we have found with respect to a jury is in TEX.CODE CRIM.P. art. 35.11 (Vernon Supp.1994), which provides for a shuffle of the jury list at the request of the defense or prosecution.

or petit juries, such term shall include persons of the female as well as the male sex.

Juror qualifications are set out in subchapter B of chapter 62 of the Texas Government Code. There is no evidence in the record before us that the district clerk's office or district judge abridged or expanded those juror qualifications. Nor does the appellant make any argument that the district clerk's office or district judge abridged or expanded those juror qualifications, except through his "randomness" argument.

Article II, section one of the Texas Constitution provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

The Texas Court of Criminal Appeals has stated that the separation of powers provision of the Texas Constitution may be violated in either of two ways. *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim.App.1990). First, it is violated when one branch of government assumes or is delegated a power that is more "properly attached" to another branch. *Id.* Second, it is violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Id.* The appellant has offered no evidence to establish that either violation occurred in this case.

We find the appellant's qualifications and separation of powers arguments to be without merit, and we overrule points of error 5, 6, 14, 15, 29, and 30.

## 4. Excuse based on economic reason

■■■ The appellant asserts that the trial erred in denying his objection to, challenge to, and motion to discharge the array, the venire drawn from the array, and the jury based on excuses granted for economic reasons under Tex.Gov't Code § 62.110(c). Section 62.110(c) provides that the court or the court's designee may not excuse a prospective juror for an economic reason unless each party of record is present and approves the release of the juror for that reason. *See Mays v. State*, 726 S.W.2d 937, 950 (Tex. Crim.App.1986).

We have reviewed the transcript and the statement of facts, and there is no indication that the appellant ever made this objection to the trial court. Furthermore, there is no evidence that any prospective juror was excused for an economic reason.

We overrule points of error 11, 20, and 35.

### · D.

### Challenges for Cause

■■■ In points of error 21 through 26, the appellant asserts the trial court erred by denying his challenges for cause to venire members Mary Barnett Blanchard (number four), Joyce A. Morningstar (number 14), Jeffrey Wayne Martin (number 28), James R. Kwiatkowski (number 29), Lois Faye Morgan (number 32), and Mary Ellen Synnott (number 35). According to the appellant, these venire members had rescheduled their jury duty days, thereby depriving him of a "fair cross-section of the community drawn randomly from an array that was properly summonsed by the Sheriff's Department." Both the appellant and the State exercised a peremptory challenge on Blanchard. Morningstar, Morgan, and Synnott sat on the jury. The appellant exercised two of his peremptory challenges on Kwiatkowski and Martin.

The terms relating to disqualification of prospective jurors was explained in *Butler v. State*, 830 S.W.2d 125, 130 n. 9 (Tex.Crim. App.1992). Under the Code of Criminal Procedure, there are three instances in which a prospective juror is disqualified from jury service *ab initio*. Tex.Code Crim.P. art. 35.19 (convicted of a felony, under indictment or other accusation for theft or any felony, or insane). All other prospective jurors are presumptively qualified, although they may harbor a disability rendering them unquali-

fied to serve. TEX.CODE CRIM.P. art. 35.16(a). Once the disability is made known to the trial court, the court disqualifies the prospective juror.

Article 35.16(a) provides that either the State or defense may challenge a venire member for cause for any one of 11 enumerated reasons listed in subsections (1) through (11). TEX.CODE CRIM.P. art. 35.16(a). In *Butler,* the Court of Criminal Appeals held that the list of reasons for challenges for cause in article 35.16 is comprehensive. 830 S.W.2d at 130. Article 35.16(a) does not include as one of the 11 grounds for cause, that a member of the venire may have had reset or rescheduled his or her date and time for appearance for jury duty.

We overrule points of error 21 through 26.

### E.

### State's Opening Statement

In point of error 36, the appellant argues the trial court erred in overruling his objection to the part of the State's opening statement about the discovery of the complainant's watch in the Mercedes. The watch was never introduced into evidence, nor did any of the police officers testify about any inventory search of the Mercedes or the discovery of the complainant's watch in the Mercedes. The appellant argues in his brief that the discrepancy between the State's opening statement and what it actually showed concerning the inventory search of the Mercedes (i.e., nothing) was never corrected and was reversible error.

The following is the relevant portion of the prosecutor's opening statement and the appellant's objection:

> The prosecutor: The evidence will also show that Mr. Marshall was able to flag down a police officer. And the evidence will show that Mr. Marshall was able to communicate to that officer, and that officer subsequently pulled over this vehicle.
>
> Defense counsel: Objection, violation of article 3823 [sic] of the Texas Code of Criminal Procedure, illegal search and seizure. Violation of section 9, Texas Code of Criminal Procedure.

> The court: Objection overruled at this time.
>
> The prosecutor: The evidence will show that during an inventory of that vehicle—
>
> Defense counsel: May I have a running objection to the balance of this?
>
> The court: Yes, you may.
>
> The prosecutor: The evidence will show *that during the inventory of that vehicle, a watch was discovered, a watch belonging to [the complainant].*

(Emphasis added.)

During its opening statement, the State may properly set out what it expects to prove, even if the State does not introduce supporting evidence at trial. *See Marini v. State,* 593 S.W.2d 709, 715 (Tex.Crim.App. 1980); *Watts v. State,* 630 S.W.2d 737, 738–39 (Tex.App.—Houston [1st Dist.] 1982, no pet.) (not reversible error that mug shot or composite drawing not admitted at trial even though mentioned in State's opening statement where defendant vigorously opposed their admission and the trial court agreed); TEX.CODE CRIM.P. art. 36.01(a)(3) (Vernon Supp.1994).

We also note that during their deliberations, the jurors sent out a request asking to see "A copy of the opening statement by the prosecution regarding 'the watch.' " The trial court responded: "The law does not permit you to review arguments of counsel because the arguments are not evidence." Even if it was error for the State to claim it would prove something and then fail to do so, any error was harmless in light of the trial court's response to the jury's question.

We overrule point of error 36.

### F.

### Motion for Mistrial

In point of error 37, the appellant contends the trial court erred in denying his motion for mistrial because the complainant made a gesture to the watch that he had on as though it were the stolen watch. According to the appellant's brief, the complainant's "unelicited" and "otherwise improper nonverbal assertion" that the watch he had on was the same watch stolen by the appellant

was clearly calculated to inflame the minds of the jury.

During the course of the complainant's testimony, defense counsel asked for a bench conference in the presence of the court reporter. The following then occurred:

Defense counsel: I'm somewhat at a loss. For some reason, he [the complainant] made a gesture to the watch that he has on, as if this indeed was the watch.... 

The court: What you're talking about is something that is probably not necessarily reflected in the record, and I don't know that any juror noted it. I mean, I wasn't even in the position to see, based on my position.

Defense counsel: My objection is that under article 169, illegal search and seizure, this is the fruit of an illegal search and seizure, and therefore, it would be inadmissible for any purpose in the courtroom, under 38.23(a) of the Texas Code of Criminal Procedure, the detention and search was all done in a warrantless fashion, and based on—I would not have made the objection had he not looked and pointed at the watch he had on, because that objection had not yet been made.

The court: My ruling will be as such: I will ask that the jury at this time disregard any gestures that were made by the witness, that they're not to be considered as evidence at this time, for any purpose. I would ask that [the prosecutor] refrain from asking any questions of this witness, at this time, that would cause him to identify any object as an item of evidence that may have subsequently been seized as a result of the arrest. And that way we can preserve this issue for another witness and we can get through this guy today.

The court: Ladies and gentlemen, the Court's ruling is as follows: You will disregard any gestures that you may have observed during the witness's last response to the questions as opposed [sic] by [the prosecutor].... You may proceed.

Defense counsel: Your Honor, in an abundance of caution, we would move for a mistrial.

The court: Motion for mistrial is denied.

■ The appellant objected to the complainant's pointing toward the watch at trial based on the watch being the fruit of an illegal search and seizure. The appellant did not object at trial, as he does on appeal, that any gesture toward the watch on the part of the complainant was calculated to inflame the minds of the jury. Accordingly, the appellant did not preserve his complaint for appellate review. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986); *Weaver v. State*, 722 S.W.2d 143, 146 (Tex.App.1986).

■ Even if error was preserved on this point, we would still overrule it. As a general rule, an instruction to disregard cures the error in the introduction of improper evidence. *Crawford v. State*, 603 S.W.2d 874, 876 (Tex.Crim.App.1980); *Lee v. State*, 779 S.W.2d 913, 917 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Only if the evidence is clearly calculated to inflame the minds of the jury and is of such a character to suggest the impossibility of withdrawing its impression on the jury is the error in the admission not cured by an instruction to disregard. *Crawford*, 603 S.W.2d at 876. We find any error in the gesture made by the complainant toward his watch was one that could be cured by the trial court's directive to the jury to disregard.

We overrule point of error 37.

### G.

#### Hearsay Testimony

In point of error 38, the appellant asserts the trial court committed reversible error by overruling his objection to the following hearsay testimony by the complainant:

Q: As a result of this gunshot wound, what in fact did occur or what in fact happened to you while you were in the hospital.... 

A: They took an x-ray and found the bullet. An hour ... later, the surgeon arrived—

Defense counsel: Objection as to what the surgeon said, constituting hearsay not within an exception.

The court: Objection sustained.

Q: I know it's difficult to testify without referring to other people's comments, but if you could, just explain what you recall happening to you?

A: I was concerned with the surgery and what they may find. *They told me the possibilities of what might happen, and those possibilities scared me.*

Defense counsel: Okay. Now, I'd object to that as constituting hearsay.

The court: Objection overruled.

(Emphasis added.)

The State argues the testimony was not hearsay because it was not offered to prove the truth of the possibilities. Alternatively, the State contends the testimony was admissible as a "present sense impression" under TEX.R.CRIM.EVID. 803(1) or as a statement for purposes of "medical diagnosis or treatment" under TEX.R.CRIM.EVID. 803(4).

 The statement can be divided into two parts. The first part, "they told me the possibilities of what might happen," is not hearsay because, as the State correctly notes, it was not offered to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). The second part, "and those possibilities scared me," is not hearsay; it expresses the feelings of the complainant and was not offered for the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d).

 Even assuming that the testimony was inadmissible hearsay, we conclude, after reviewing the source of the error, the nature of the error, whether and to what extent it was emphasized by the State, and its probable collateral implications, that the error was harmless. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

The indictment charged in two paragraphs that the appellant placed the complainant in fear of imminent bodily injury and death and used a deadly weapon, and caused bodily injury by shooting the complainant with a deadly weapon. *See* TEX.PENAL CODE §§ 29.-02(a), 29.03(a)(2). Aggravated robbery is a first-degree felony, punishable by life imprisonment or for any term of not more than 99 years or less than five years, and a fine not to exceed $10,000. The appellant's sentence was in the middle: 50 years and $5,000.

The evidence about the possible results of the surgery and that it scared the appellant, concerned the feelings of the victim of the aggravated robbery, not the guilt or innocence of the appellant. The source and nature of the error did not center on a principle of law, such as the right to counsel, the right to be free from unreasonable searches and seizures, or a legally obtained confession.

The prosecutor did not discuss in his opening statement or closing arguments what the complainant may have been thinking or feeling when he was in the hospital emergency room after the shooting. Any fear or pain the complainant had in the hospital was not relevant to the guilt or innocence of the appellant. The prosecutor only addressed the fear the complainant had at the time of the robbery and the pain the complainant experienced when he was shot at the scene of the robbery, elements of the offense of aggravated robbery.

The collateral consequences of any hearsay would be sympathy for the victim, the complainant, and a desire to punish the appellant. Given the circumstances of this case, the jury probably felt those emotions anyway: The complainant testified the appellant shot at him once and missed; he stated that the gun failed to fire a second time and the appellant ejected two bullets; finally, the appellant shot the complainant, from a distance of about 18 inches, with the fourth bullet.

We find beyond a reasonable doubt that the admission of the hearsay testimony made no contribution to the appellant's conviction or punishment. *Harris,* 790 S.W.2d at 587. We overrule point of error 38.

### H.

### State's Closing Argument

In point of error 39, the appellant claims the trial court erred in overruling his objection to the following closing argument of the State:

Prosecutor: But that's not all the evidence we have. That's not all the evidence we have, ladies and gentlemen.

What else do we have?

I put on Roxann Ogden. **Roxann Ogden is an unbiased individual** in this case.

Defense counsel: Again, objection, Your Honor, that's a personal opinion of the prosecutor. Constitutes bolstering.

The court: Overruled.

Prosecutor: She did not know [the complainant]. She didn't know John Singleton. All she was doing was dropping her child off.

(Emphasis added.)

 Jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions drawn from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App.1987); *Morris v. State,* 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

After defense counsel's objection was overruled, the prosecutor elaborated on what he meant by "unbiased." He used it to mean that Ogden did not know either the complainant or the appellant before the events of August 20, 1991.

It could be deduced from the testimony of Ogden that she did not know the complainant: she did not live near his neighborhood, she operated her own company, and on August 21, 1991, she called the police to find out what, if anything, had happened as a result of her "tip" the day before. She described the appellant as he appeared on August 20, 1991, and identified him in court. It could be deduced that she did not know him.

In his closing arguments, defense counsel made the following comments, strongly implying that the complainant, Ogden, Marshall, the police, and the prosecutor had gotten together to make the case against the appellant:

I submit to you that the inconsistencies [in the complainant's testimony] are based on sudden, trial-time recollections after getting together with the prosecutor, and other witnesses in the case, before trial, and not based on data that was acquired inside that brain, at the time of the incident in question.

At least ask yourself the question before you come to the conclusion. That affects his credibility. I can't tell you how much. You'll have to make that decision, those of you who are open minded enough or who are not imbued with the same degree of suspicion as the two witnesses that took the witness stand, the two civilian witnesses, Ogden, and the other guy, Marshall.

Ask yourself this: Ogden, Marshall, Valentino and Sala saw anything but what they're trying to connect to what [the complainant] says he saw.

The prosecutor's reference to Ogden as "unbiased," was in response to defense counsel's implication that she was not.

We overrule point of error 39.