Opinion issued March 19, 2009

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00856-CR






KEITHRON MARQUIS FIELDS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 1085482






MEMORANDUM OPINION


 A jury convicted appellant, Keithron Marquis Fields, of capital murder. (1) The
trial court sentenced appellant to imprisonment for life without parole. (2) In two points
of error, appellant argues that (1) the trial court erred in admitting photographs of the
bodies of the complainant and her boyfriend, Huy Ngo, because the probative value
of the photos was substantially outweighed by the danger of unfair prejudice and (2)
his constitutional and state rights to due process were violated when the State's
evidence failed to conform to the proof that the State promised to present in its
opening arguments. 

 We affirm the judgment of the trial court.

Background

 On June 18, 2006, the complainant, Maria Sally Aparece, drove her father's
blue 2003 Toyota Matrix ("Matrix") to the home of her boyfriend, Huy Ngo, to return
his keys. The complainant left her house at approximately 1:00 a.m. and arrived at
Ngo's home at approximately 2:00 a.m. Ngo walked outside to the driveway of his
home to meet the complainant and sat on the passenger's side of the Matrix with her. 
 Appellant and four other persons drove up in a black Nissan Sentra ("Sentra")
and parked next to the curb near Ngo's home. Appellant, Dexter Johnson, and
accomplice witness Louis Ervin exited the Sentra and approached the Matrix;
Timothy Randle and Ashley Ervin remained in the Sentra. Appellant was carrying
a handgun and was wearing black pants, a black hooded jacket, a white T-shirt, and
a black-and-white bandanna covering his face. Johnson was carrying a shotgun and
was wearing black pants, a black shirt, a white T-shirt, and a black-and-white
bandanna covering his face. Ervin wore a black outfit but had neither a gun nor a
bandanna. 

 Appellant moved to the passenger's side door of the Matrix as Johnson moved
to the driver's side door. Ervin was standing at the back door of the vehicle. Johnson
knocked on the driver's side window with his shotgun and told the complainant to get
out of the car. Appellant stood at the passenger side window and pointed his handgun
at Ngo. When the complainant refused to leave the car, Johnson threatened to shoot
through the window and pull her out. When the complainant opened the car door,
Johnson pulled her out of the car using her hair and threw her into the back seat. Ngo
left the car and appellant directed him to sit in the back seat.

 Johnson then drove the Matrix out of the driveway while appellant sat in the
passenger's seat and Ervin sat in the back seat with the complainant and Ngo. The
two other persons in the Sentra followed. Ngo was comforting the complainant while
Johnson was asking her about where she kept her money. Appellant found her purse
on the passenger's seat, poured out the contents, and searched for valuables. 
Appellant found the complainant's credit card, and Johnson asked her if she had
"some money on it." When the complainant told him that she did not have any money
on the card, Johnson pointed his gun at her as he continued to drive. After
discovering that the credit card was not activated, Johnson told the complainant to use
her mobile phone to activate the card. When she told Johnson that she did not know
how to activate the card, Johnson accused the complainant of lying. Johnson also
asked Ngo if he had money. Ngo relinquished his wallet to Johnson. 

 After driving around for approximately 30 minutes, Johnson drove to a wooded
area near the 10400 block of Gateway in Houston, Texas. Johnson told Ngo to leave
the car and climb into the trunk. Appellant opened the trunk and forced Ngo into the
trunk. Johnson then began to sexually assault the complainant in the back seat of the
car. Appellant then led Ngo out of the trunk and told him to get on the ground of the
wooded area. Appellant told Ngo that Johnson was raping the complainant. Ngo
began to cry. 

 Timothy Randle, who followed appellant and his party in the Sentra, came out
of his vehicle to ask Ngo if he had any money. Ngo did not answer, and Randle hit
him. Ngo fell prostrate on the ground. Appellant watched as Randle brandished his
gun. 

 At approximately the same time, Johnson completed his sexual assault and left
the Matrix. Johnson told the naked complainant to leave the car and get on her knees. 
He then told appellant that he wanted to walk the complainant and Ngo in the woods
and kill them. While the complainant begged Johnson not to hurt them, Johnson and
appellant led the complainant and Ngo across a board into the woods. Johnson shot
both the complainant and Ngo and left their bodies in the woods. Johnson and
appellant walked out of the wooded area toward the Matrix and laughed about killing
the complainant and Ngo. 

 Officers with the Humble Police Department found Johnson at an apartment
in Humble, Texas after receiving a missing person's report from the mother of
Johnson's fourteen-year-old girlfriend. Police arrested Johnson for possession of
marijuana. Humble police also found the Matrix near Johnson's residence. Based on
statements given by Johnson and evidence obtained by the Humble Police
Department, homicide investigators with the Houston Police Department obtained a
warrant for appellant. Appellant was arrested on June 23, 2006. 

 Appellant's trial began on September 21, 2007. In its opening statement to the
jury, the State stated, over appellant's objections, that it would present Victor Luong
as a witness. The State told the jury that appellant, Dexter Johnson, and Timothy
Randle had forced Luong into his own car at gunpoint and had driven Luong around
for three hours to steal his property and his credit cards. The State told the jury that
Luong saw Johnson driving the complainant's blue Toyota Matrix during Luong's
confinement in his own car. The State also told the jury that Luong "was able to note
the license plate" of the Matrix and that his testimony allowed police to "connect up
some of these loose ends" in order to solve the case. The State never presented
Luong's testimony to the jury. 

 At trial, the State introduced several photographs of the bodies of the
complainant and Ngo taken at the crime scene. Appellant objected to the 
photographs marked as State's Exhibits 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 46, 48,
50, 54, 55, 57, 58, and 60. Exhibit 33 depicts Ngo's decomposing body and the
surrounding vegetation where his body was found. Exhibits 34, 35 and 36 are close-ups of Ngo's head and chest with the skull and rib cage exposed and extensive
maggot infestation. Exhibits 37 and 38 depict the partially clothed lower half of
Ngo's body and show decomposition in Ngo's waist and legs. Exhibits 39 and 40
depict Ngo's decomposing arms. Exhibits 41 and 42 depict Ngo's body being
inspected by the medical examiner at the crime scene. Exhibit 46 depicts the
backside of Ngo's body with maggot infestation on the head, back and shoulders.

 Exhibit 48 depicts the complainant's decomposing body with maggot
infestation. Exhibit 50 is a close-up of the complainant's head with maggot
infestation. Exhibits 54 and 55 are photographs of her lower body, including her legs
and torso. Exhibit 57 shows the medical examiner at the crime scene placing bags
over the complainant's hands. Exhibit 58 is a photograph of the complainant's
backside, showing maggot infestation. Exhibit 60 depicts the medical examiner
taking hair samples from the complainant's skull.

 Appellant made an objection to the trial court in which he said that the
photographs "are not really probative of anything. No one is contesting the fact that
these two people were killed and that their bodies were found there that--and that
they were in a state of advanced decomposition." Appellant also said that the photos
were "highly inflammatory" and that he had "never seen such, such grotesque,
gruesome and grisly photos." The trial court overruled appellant's objection.

 The State also introduced photographs depicting the complainant's autopsy. 
Appellant objected to the autopsy photographs marked as State's Exhibits 146, 147,
148, 159, 160, 172 and 174. Exhibit 146 depicts the complainant's head after the
medical examiner had cleaned the head. Exhibit 147 shows the wristband used to
identify the complainant's body. Exhibit 148 depicts the complainant's genital area. 
Exhibit 159 depicts the complainant's discolored backside with significant maggot
infestation. Exhibit 160 depicts the front side of the complainant's body. Exhibits
172 and 174 depict bullet wounds to Ngo's skull.

 Appellant made another objection, telling the trial court that the photos are
"grisly, graphic 8-by-10 color photos of decomposed bodies, and internal organs and
so forth. They're inflammatory and cumulative. More prejudicial." The trial court
overruled appellant's objection. Appellant did not present any evidence or testimony
at trial. The jury convicted appellant of the capital murder of the complainant on
September 26, 2007. 


Admission of Photographic Evidence Under Texas Evidence Rule 403

 In his first point of error, appellant argues that the trial court erred when it
admitted into evidence photographs of the decedents when the probative value of the
photographs were substantially outweighed by the danger of unfair prejudice in
violation of Texas Rule of Evidence 403. The State argues that appellant waived his
objection to the admission of the photographs and that, even if he did not, the
photographs were properly admitted into evidence. 

 Waiver of Objection to Admission of Photos

 The admissibility of a photograph is within the sound discretion of the trial
court. Gallo v. State, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). Generally a
photograph is admissible if verbal testimony as to matters depicted in the photographs
is also admissible. Id. (citing Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim.
App. 1997)). When the trial court hears objections to offered evidence out of the
presence of the jury and rules that such evidence be admitted, such objections shall
be deemed to apply to such evidence when it is admitted before the jury, without the
necessity of repeating those objections. Tex. R. Evid. 103 (a)(1); Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (when defendant made objection to
admission of two photographs at bench conference and received ruling admitting
photographs, it was not necessary to repeat objections to preserve error). 

 Here, appellant objected to the photos depicting the crime scene outside the
hearing of the jury and prior to their introduction. After the court overruled
appellant's initial objection, he did not reassert his objection to the admission of the
photos marked as State's Exhibits 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 46, 48, and
50. Appellant also objected to the admission of a series of autopsy photos marked as
State's Exhibits 146, 147, 148, 159, 160, 172 and 174 outside the hearing of the jury
and prior to its introduction. The trial court overruled his objection. Appellant
requested a running objection to these photos, and the trial court granted this request. 
Because appellant made his objections to the photos, outside the hearing of the jury
and the trial court made a ruling overruling his objection, appellant did not waive his
objections to the twenty-five photos on which he bases his appeal. Tex. R. Evid. 103
(a)(1); Martinez, 98 S.W.3d at 193. We therefore address the merits of appellant's
first point of error.

 Rule 403 Analysis

 Texas Evidence Rule 403 allows a trial court to exclude otherwise relevant
evidence when the probative value of the evidence "is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tex.
R. Evid. 403; see also Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). 
We review the trial court's admission of photographs into evidence under an abuse
of discretion standard, and we will not reverse the trial court's ruling unless it falls
outside the zone of reasonable disagreement. See Resendiz v. State, 112 S.W.3d 541,
545 (Tex. Crim. App. 2003); see also Wyatt v. State, 23 S.W.3d 18, 29 (Tex. Crim.
App. 2000). However, we must do more than decide whether the trial court
conducted the required balancing analysis between probative and prejudicial values. 
Shuffield v. State, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). We must determine
that the trial court's ruling is reasonable in view of all the relevant facts. Id. 

 When reviewing the trial court's ruling admitting photographic evidence to
which objection has been made under Rule 403, we must consider the form, content,
and context of the photographs. Erazo, 144 S.W.3d at 492 (citing Narvaiz v. State,
840 S.W.2d 415, 429 (Tex. Crim. App. 1992)). We must use the following factors
when making a Rule 403 analysis: (1) the probative value of the evidence; (2) the
potential to impress the jury in some irrational, yet indelible, way; (3) the time needed
to develop the evidence; and (4) the proponent's need for the evidence. Id. at 489
(citing Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990)). We
also consider the factors set out in Narvaiz, namely, the number of photographs, the
size of the photographs, whether the photographs are in black and white or in color,
whether the photographs are gruesome, whether a body is shown in the photographs
clothed or naked, and whether the body has been altered by an autopsy. Erazo, 144
S.W.3d at 489; Narvaiz, 840 S.W.2d at 429. Photographs depicting matters described
by admissible testimony are generally admissible. Erazo, 144 S.W.3d at 489.

 "If a photograph is competent, material and relevant to the issue on trial, it is
not rendered inadmissible merely because it is gruesome or might tend to arouse the
passions of the jury, unless it is offered solely to inflame the minds of the jury." 
Erazo, 144 S.W.3d at 489. The probative value of a color photograph or a videotape
depicting the recovery of a murder victim's body may outweigh its prejudicial effect
even when the depiction includes close-ups and lingering camera angles, so long as
the images simply reflect the gruesomeness of the offense. See Ripkowski v. State,
61 S.W.3d 378, 392 (Tex. Crim. App. 2001). The probative value of a series of
autopsy photos of murder victims may outweigh its prejudicial effect when the series
of photos is used to assist a medical examiner's testimony. Newbury v. State, 135
S.W.3d 22, 43 (Tex. Crim. App. 2004). 

 (1) Probative Value

 The challenged photos depict the crime scene and autopsies of Ngo and the
complainant. 

 (a) Crime Scene Photos

 The crime scene photos were described during the direct testimony of Houston
Police crime scene investigator G.H. West. Sergeant West used the photos to
describe the crime scene, the injuries suffered by the victims, and the evidence
obtained at the crime scene to support testimony as to the time and nature of the
crime. Exhibit 33 depicts Ngo's decomposing body and the surrounding vegetation
where his body was found. Exhibits 34, 35 and 36 are close-ups of Ngo's head and
chest with the skull and rib cage exposed and extensive maggot infestation. Exhibits
37 and 38 depict the partially clothed lower half of Ngo's body and show
decomposition in Ngo's waist and legs. Exhibits 39 and 40 depict Ngo's
decomposing arms. Exhibits 41 and 42 depict Ngo's body being inspected by the
medical examiner at the crime scene. Exhibit 46 depicts the backside of Ngo's body
with maggot infestation on the head, back and shoulders. 

 Exhibit 48 depicts the complainant's decomposing body with maggot
infestation. Exhibit 50 is a close-up of the complainant's head with maggot
infestation. Exhibits 54 and 55 are photographs of her lower body, including her legs
and torso. Exhibit 57 shows the medical examiner at the crime scene placing bags
over the complainant's hands. Exhibit 58 is a photograph of the complainant's
backside, showing maggot infestation. Exhibit 60 depicts the medical examiner
taking hair samples from the complainant's skull. 

 While gruesome, the crime scene photos are relevant because they accurately
reflect the location and state of the victims' bodies when they were discovered and
the injuries inflicted on them. See Ripkowski, 61 S.W.3d at 392. Such depictions
give the photos substantial probative value. Id. The crime scene photographs of the
complainant's and Ngo's bodies support testimony that the victims were shot in the
head and left exposed in the woods. The photographs of the complainant's body
support West's testimony about the complainant's state of undress, which, in turn,
corroborates the sexual assault testimony and the decomposition of the body that
occurred during the period the complainant was missing, supporting testimony as to
the date and circumstances of the crime. The crime scene photos of Ngo's body
likewise support West's testimony about the decomposition that occurred due to the
bodies' exposure to the heat and elements in the woods during the period the
complainant and Ngo were missing.

 We conclude that the crime scene photos had substantial probative value. 
Ripkowski, 61 S.W.3d at 392. 

 (b) Autopsy Photos

 The autopsy photos were described during the direct testimony of Harris
County assistant medical examiner Dr. Stephen Wilson. The photographs, while
vivid, are not large, and all were taken from different angles. They are not
excessively prejudicial. See Tex. R. Evid. 403; Erazo, 144 S.W.3d at 492 (citing
Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990)). Exhibit 146
depicts the complainant's head after the medical examiner had cleaned it. Exhibit
147 shows the wristband used to identify the complainant's body. Exhibit 148
depicts the complainant's genital area. Exhibit 159 depicts the complainant's
discolored backside with significant maggot infestation. Exhibit 160 depicts the front
side of the complainant's body. Exhibits 172 and 174 depict bullet wounds to Ngo's
skull. 

 The autopsy photos of both the complainant and Ngo were introduced into
evidence along with testimony from Dr. Wilson. Dr. Wilson used the photos of the
complainant's autopsy to explain the injuries and cause of death, namely the
complainant's being shot in the head in the woods, as well as the state of
decomposition due to the exposure of the body outside in the heat for several days. 
Wilson used the photos of Ngo's autopsy to discuss the cause of death and the state
of the decomposition of Ngo's body, which was likewise consistent with its being left
in the heat, and thus to place the complainant's death in context. 

 We conclude that, because the autopsy photos were used to assist Wilson's
testimony as to the cause and manner of the complainant's death, these photos have
significant probative value. Newbury, 135 S.W.3d at 43. 

 This factor thus weighs in favor of admissibility of both sets of photos.

 (2) Potential to Impress Jury in Irrational, Indelible Way

 While the photos make an indelible impression, they do not depict more than
the nature of the crime. Ripkowski, 61 S.W.3d at 392. The crime scene photos and
the autopsy photos show the nature of the crime and the nature of the wounds
inflicted on the victims. The photos also help to date the crime to a time shortly after
the complainant disappeared. None of these images simply appeal to the jury's
emotion to lead the jury to make an irrational verdict. Erazo, 144 S.W.3d at 494-95. 
The photos are, therefore, unlikely to render the jury irrational and incapable of
making a sober assessment of the facts. Id. at 495. This factor likewise weighs in
favor of admissibility of both sets of photos.

 (3) Time Needed to Develop Evidence

 Prior to the introduction of each set of photos, the trial court convened a bench
hearing on the admissibility of the individual photos and overruled each of
appellant's objections. During trial, the State used the photos during direct testimony
from Houston Police Department crime scene investigator G.H. West and Harris
County assistant medical examiner Dr. Stephen Wilson. Because of the large number
of photographs involved, the State took the necessary time to get the trial court's
ruling on admissibility at a hearing before the bench. Once the trial court ruled in
favor of admissibility of the photos, the State proceeded through each series of photos
expeditiously. This factor weighs in favor of admissibility of both sets of photos.

 (4) Proponent's Need for Evidence

 Appellant repeatedly told the trial court that he did not contest that the deaths
were caused by Dexter Johnson and his party, and he repeatedly objected that much
of the photographic evidence was unnecessary because of his concession. The State
argued to the trial court that it needed photographic evidence of both the
complainant's body and Ngo's body because "it goes to show that they were killed
in the same time in the same area." The State also argued that the photos were needed
because "some of the [State's] civilian witnesses actually went to the scene before the
police ever found the bodies. It goes to corroborate what they say they saw at the
scene. They described two bodies and the state they were in. I think it goes to
corroborate their observations." Because the State had several witnesses whose
testimony was corroborated by the photos of the complainant's and Ngo's bodies, and
because the photos supported testimony as to the manner, time, and place of death,
the State demonstrated a need for this evidence. This factor weighs in favor of
admission of the set of photos depicting both bodies. However, the State did not
prosecute appellant for Ngo's death. Therefore, this factor weighs somewhat against
admission of the set of photos depicting Ngo's body. 

 (5) Other Factors

 No other factors argue materially either for or against the admission of the
photos.

 For the foregoing reasons, we hold that the trial court did not err in admitting
the photos marked as State's Exhibits 33, 34, 34, 36, 37, 38, 39, 40, 41, 42, 46, 48,
50, 54, 55, 57, 58, 59, 60, 146, 147, 148, 159, 160, 172, and 174. 

 We overrule appellant's first point of error. 

Error in State's Opening Argument

 In his second point of error, appellant argues that his constitutional and state
rights to due process were violated when the State's evidence presented at trial failed
to conform to the proof that the State stated it would present in its opening arguments. 

 The purpose of the State's opening statement is to "state to the jury the nature
of the accusation and the facts which are expected to be proved." Tex. Code Crim.
Proc. Ann. art. 36.01(a)(3) (Vernon 2007). It is proper for the State to set out what
it expects to prove, even if the State does not introduce supporting evidence at trial. 
Singleton v. State, 881 S.W.2d 207, 215 (Tex. App.--Houston [1st Dist.] 1994, pet.
ref'd.) (citing Marini v. State, 593 S.W.2d 709, 715 (Tex. Crim. App. 1980)). 

 Prior to opening statements, the trial court convened a hearing at the bench on
a motion for appellant to exclude evidence of extraneous offenses. The trial court
denied appellant's motion. The State began its opening statement to the jury and
stated that it planned to prove that appellant and Dexter Johnson killed the
complainant and Ngo after they kidnaped and robbed the couple. The State stated 
it would show that Johnson raped the complainant, and appellant and Johnson, aided
by others, marched the complainant and Ngo into the woods and shot them. The State
also stated it would provide evidence from the medical examiner, Dr. Stephen
Wilson, that the bullets extracted from the complainant and Ngo matched the gun
used by Johnson to kill them.

 Over appellant's objections, the State also stated it would provide testimony
from several witnesses who saw appellant and Johnson driving around in the
complainant's Matrix during the time that the complainant's and Ngo's bodies were
missing. In this regard, the State stated it would to provide testimony from Victor
Luong who was described as "a witness who was robbed by this group of people the
very next night after the murder occurred." During its opening statement, the State
made the following comment to the jury:


 [ State]: You will hear from a witness named Vincent Luong,
a 19-year old boy who was returning to his house
one night at 11:00 o'clock from the gym. He parked
his car, was walking up into his parents' home when
the blue Toyota Matrix pulls up, three people--

 

 [Defense]: May I have a running objection?

 

 [Court]: I'll give you a running objection.

 

 [State]: Three people, including [appellant], Alvie Butler
and Timothy Randle, jump out of that blue Toyota
Matrix, force him at gunpoint into his own vehicle
while Dexter Johnson driving the blue Toyota
Matrix follows the three of them and him in his own
vehicle. He'll tell you that in the three hours that
they drove him around trying to get his property and
his credit cards that he was able to get a very good
look at [appellant]. You're going to find that
Vincent Luong had very excellent survival skills,
that he was able to note the license plate on the blue
Toyota Matrix and that he was part of the reason
why the police were able to connect some of these
loose ends and figure out what was going on that
week that their bodies were missing. 


The State failed to present Vincent Luong to the jury. 

 The State's opening statement set out the facts it intended to prove at trial to
establish appellant's guilt. Although the State stated that Luong's testimony would
"connect some of these loose ends" between appellant and the crime, Luong's
testimony was not a material component of the State's presentation of evidence. The
State presented 24 witnesses, who covered the physical and time-line evidence
connecting appellant to the crime, including three witnesses who each saw appellant
in the blue Toyota Matrix in the days after the complainant's disappearance. This
testimony corresponded to the State's opening statement of what it intended to prove
and was sufficient to establish appellant's guilt beyond a reasonable doubt. 
Therefore, the reference to Luong was not improper. Marini v. State, 593 S.W.2d
709, 715 (Tex. Crim. App. 1980); see also Singleton, 881 S.W.2d at 215.

 Appellant relies on United States v. Young to argue that the State's failure to
produce evidence that conformed to its promise in the opening statement violated his
constitutional due process rights. 470 U.S. 1, 105 S. Ct. 1038 (1985). However,
Young is factually distinguishable from this case. In Young, the appellant complained
of a comment made by the federal prosecutor regarding his personal impressions of
the culpability of the defendant during rebuttal argument after the defense counsel
had made a closing argument impugning the personal integrity of the prosecutor. Id.
at 4-5, 105 S. Ct. at 1040-41. The United States Supreme Court held that the
prosecutor's comments did not constitute plain error that undermined the fundamental
fairness of the trial. Id. at 16-17, 105 S. Ct. at 1047-48.

 Here, the State merely stated during opening argument that it would present
Luong's testimony and what it expected that testimony to prove. The same proof that
appellant was driving the complainant's Matrix after she disappeared and before her
body was found was presented by other witnesses. Although the State failed to
present Luong's testimony, the State did not comment on its personal impressions of
appellant's culpability. Therefore, we conclude that Young does not apply. 

 We overrule appellant's second point of error.

Conclusion


 We affirm the judgment of the trial court.






 Evelyn V. Keyes

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.4.
1. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2008) ("A person commits
an offense if he commits murder as defined under Section 19.02(b)(1) and the person
intentionally commits the murder in the course of committing or attempting to commit
kidnaping, burglary, robbery, aggravated assault, arson, or obstruction or
retaliation.").
2. See id. § 12.31(a) (Vernon Supp. 2008); Tex. Code Crim. Proc. Ann. art. 37.071, 
§ 1 (Vernon 2006).