Agnes Fayreene BLAKENEY, Appellant,

v.

NATIONAL FARM LIFE INSURANCE COMPANY, Appellee.

No. 6380.

Court of Appeals of Texas, Waco.

June 17, 1982.

Rehearing Denied July 8, 1982.

Beverly Willis, Naman, Howell, Smith, Lee & Muldrow, P. C., Waco, for appellant.

Sherwin A. Winniford & Steven L. Wells, Fulbright, Winniford, Bice & Marable, Waco, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Blakeney from judgment she take nothing in her suit

to recover $10,000.00 accidental death insurance proceeds.

Plaintiff sued defendant Insurance Company as beneficiary of an accidental death policy on the life of her son Bobo. The accidental death means benefit contained an exclusion providing same shall not be payable if the insured died while "participating in or attempting to commit an assault". Bobo died from gunshot wounds received outside a tavern in Rosebud, Texas around midnight April 17, 1980. His assailant Lorenzo Sisneros, had been forcibly removed from the tavern by the deceased after the exchange of words inside.

Trial was to a jury which failed to agree on Issue 1 inquiring if the deceased's death resulted from accidental means; but answered Issue 2; that "Blakeney was participating in or attempting to commit an unlawful assault on Sisneros at the time he was shot"; and Issue 3 that "Death resulted from Blakeney's participating or attempting to commit an assault".

The trial court rendered judgment on such verdict that plaintiff take nothing.

Plaintiff appeals on 10 points which present 2 main contentions.

Contention 1 asserts the jury's answers to Issues 2 and 3 are against the great weight and preponderance of the evidence.

There were 3 witnesses to the shooting other than Sisneros. As noted the jury found that the insured's death resulted from his participation in or attempt to commit an assault on Sisneros.

Sisneros testified he was in Bill's place drinking beer; that he didn't know Blakeney, but had seen him before at Bill's place drinking beer; that Blakeney began cursing him and told him he would throw him out of the place; that he was scared of Blakeney who was much larger than he was; that Blakeney grabbed him off the bar stool he was sitting on and threw him on the floor, that Blakeney threw him out the door onto the gravel parking lot, that he got up and went to his truck at which time he noticed Blakeney had come out of the tavern and was rapidly walking toward him;

Blakeney said to him "Mexican, you son of a bitch, I'm going to whip your goddam ass"; that he told Blakeney to stop and behave, but Blakeney continued toward him; that Blakeney was 4 or 5 feet from him he got a gun from the dashboard of his truck and shot him; that from the time Blakeney threw him out of Bill's place until he shot Blakeney not more than one or two minutes elapsed.

Gina Cox testified she was in charge of Bill's place, which was owned by her father; that she had noticed some kind of dispute between Blakeney and Sisneros between 11:30 and midnight; that Blakeney said something to Sisneros about interrupting a conversation and he was going to throw him out of the tavern; that Blakeney proceeded to throw Sisneros out of the place; that after Blakeney threw Sisneros out Blakeney left within 5 minutes; that she did not see any of the events on the outside.

Paul Zepperlin testified he was in the tavern the night Blakeney was shot; that he was talking with Blakeney when Blakeney became irritated with Sisneros and told Sisneros "Shut up or I'm going to throw you out"; that he could see no reason Sisneros should be thrown out of Bill's place; but that Blakeney walked over to Sisneros and shoved him out the door; that they all left Bill's place within 2 to 4 minutes; that when they walked outside Blakeney veered off toward Sisneros who was in his truck; that he Zepperlin said to Blakeney "O come on Bobo"; that he felt a fight might ensue; that Blakeney was 21 years old, 6 feet 4 inches tall and weighed 240 pounds; and Sisneros was 43 years old and 5 feet 8 inches tall and weighed 140 pounds; that Blakeney continued to advance toward Sisneros until Sisneros who was standing behind the open door of his truck shot him when they were 2 to 3 feet apart.

Mark Brown testified he was outside the tavern in a truck and saw Sisneros being thrown out of the tavern and that he landed on his backside; that he saw Blakeney come out of Bill's place and head toward

Sisneros; that he could not hear the conversation between them; that Sisneros and Blakeney were about 17 to 20 feet apart when Sisneros shot him.

Under such record we think the jury authorized to answer Issues 2 and 3 as they did and that such answers are not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660.

Contention 2 complains of the action of the trial court in receiving the verdict of the jury and rendering judgment thereon.

After both sides closed the jury retired to deliberate upon four special issues submitted by the trial court. The first inquired whether the insured's death resulted from purely accidental means. The second inquired whether the insured was participating in or attempting to commit an assault at the time he was shot; the third, contingent upon an affirmative answer to the second, asked whether the death of the insured was a result of the assault. The fourth concerned attorney's fees. After the jury returned to the courtroom the first time they were sent back for further deliberations after reporting that ten jurors didn't agree on all the issues. When they returned a second time the foreman initially informed the court that the jury did not reach a verdict; he reported "there were not ten jurors who can reach an agreement on all the issues." The trial court then inquired about each issue. The foreman reported that nine jurors had agreed on an affirmative answer to the first issue; that ten jurors had agreed on answers to issues 2 and 3, and that the answer to issue 4 was unanimous. The court then polled the jury individually and asked whether further deliberations would be fruitful in an attempt to get the agreement of ten jurors upon the first issue. One juror responded that she didn't know, but eleven told the court that further deliberations would be futile. The court then closed the proceedings with this statement:

"The verdict as signed by the jury will be received by the court and I will discharge you as jurors at this time. Thank you for your service. It is too bad we haven't gotten a verdict. All our time was spent in vain, but I appreciate it. I know you are good, conscientious jurors. You may leave at this time."

Thereafter the court rendered judgment plaintiff take nothing based on the jury's answers to issues 2 and 3, reciting that issue 1 was unanswered. Appellant filed a motion for mistrial and a motion for a new trial contending no lawful verdict was rendered by the jury or accepted by the court. She pursues these contentions here in contention 2 asserting no verdict was returned by the jury and accepted by the court prior to discharge of the jury, that the jury didn't affirm any verdict prior to their discharge, that appellant was given no opportunity to poll the jury, and that no judgment could be based upon answers not proven up as the jury's verdict.

If there was a lawful verdict, the trial court was correct in entering judgment based upon the jury's answers to two of the issues, for where a court can obtain a verdict upon partial answers to special issues the court has a duty to enter judgment based on those answers. *Security State Bank and Trust v. Craighead*, (CA San Antonio) NRE, 440 S.W.2d 701. Here, the jury's answers to issues 2 and 3 established the applicability of the assault exclusion and negated appellant's cause of action regardless of the answers to the other issues. Before the trial court gave any indication that a mistrial was being contemplated appellant knew, or should have known, that the jury had already determined whether or not the assault exclusion applied; thus, at this point appellant had notice of the possibility the jury had rendered findings sufficient to support a judgment for appellee. It was at this point appellant should have taken steps to confirm that these answers were the final answers of the jury by requesting a poll of jurors if so desired. In

the absence of any request for a poll of the jury appellant has waived any objection that the jury didn't affirm their verdict or that the trial court didn't make proper acceptance of the verdict. See *M. L. Mayfield Petroleum Corporation v. Kelly*, (CA Tyler) NRE, 450 S.W.2d 104. We overrule contention 2.

All of appellant's points have been considered and are overruled.

AFFIRMED.