Rosa Maria GARCIA, Appellant,

v.

SPOHN HEALTH SYSTEM COR-
PORATION, d/b/a Spohn Hos-
pital, Appellee.

No. 13–98–447–CV.

Court of Appeals of Texas,
Corpus Christi.

April 28, 2000.

Rehearing Overruled July 6, 2000.

Cage Wavell, Corpus Christi, Donald B. Edwards, Craig S. Smith, Smith & Edwards, Corpus Christi, for Appellant.

M. W. Meredith, Jr., Clay E. Coalson, meredith, Donnell & Abernethy, Corpus Christi, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and CHAVEZ.

## OPINION

Opinion by Justice DORSEY.

Rosa Maria Garcia sued various entities including Spohn Health System Corp. d/b/a Spohn Hospital ("Spohn" or "the hospital"), the provider for emergency room services, and several doctors for injuries she sustained after being treated at the hospital. Garcia contends that the negligent acts of those defendants caused her

to develop Stevens–Johnson Syndrome, resulting in pain, scarring, sensitivity to the sun, disfigurement, and a damaged sense of taste and voice. She believes that her illness was caused by an over-prescription of the drug Dilantin.

Her case was tried to a jury. During deliberations the jury announced it was deadlocked as to a number of questions, but unanimously agreed that the hospital was not negligent. Based upon that partial verdict, the trial court entered a take-nothing judgment in favor of Spohn Hospital and severed the cause against the hospital from that against the other defendants, granting a mistrial as to the other defendants. Garcia appeals this take-nothing judgment against Spohn by four points of error.

### Receipt of Partial Verdict

In her second point of error, Garcia contends that the trial court improperly entered judgment on a partial jury verdict that left material questions unanswered. The first jury question read:

Did the negligence, if any, of those named below proximately cause the injuries of Rosa Maria Garcia? Answer yes or no for each of the following:
A. Neurosurgery, PA;
B. George Nelson, MD;
C. Todd Howell, MD; and
D. Spohn Hospital.

The jury was instructed not to answer the remaining questions regarding proportionate responsibility and amount of damages unless it answered "yes" to at least one defendant in Question No. 1.

After some deliberation, the jury sent a note to the court that read:

On Question 1: *"Did the negligence, if any, of those named below proximately cause the injuries of Rosa Maria Garcia?"*

*Neurosurgery:* "Yes"—7, "No"—5.

*George Nelson:* "Yes"—6; "No"—6.

*Todd Howell:* "Yes"—7, "No"—5.

*Spohn Hospital:* "Yes"—0; "No"—12.

*This is our decision. Is it enough?*

The court responded with a note stating: *"Members of the jury: In answer to your question, 10 or more of you must agree upon all of the answers made and to the entire verdict."*

Later, the jury sent the following note to the court:

The jurors advise this court the following: The jurors on principal [sic] will not do any type of compromise. Please give us instructions on how to handle on an impasse. Please give us detailed instructions.

The court asked for responses from the respective attorneys regarding that message. None was particularly opposed to mistrial, but counsel for Spohn and counsel for Garcia disagreed whether the court could properly receive a partial verdict against Spohn Hospital based on the previous jury note, or whether mistrial must be declared as to all parties.

The court called the jury back in. He asked the jury foreman if they had taken a vote on Question 1. The foreman said they had. The court read the number of votes regarding the negligence of each defendant from the note, and the foreman confirmed that those counts were accurate. Then, the court polled each individual juror regarding the negligence of Spohn Hospital.

Upon questioning the first juror, counsel for Garcia was also allowed to ask the juror whether there was any chance she would have changed her mind if she knew that the jury was hopelessly deadlocked on the entire verdict. This juror stated: "Okay. Ever since we deliberated, I already said no. I firmly from the beginning until the end I said no, Spohn is not responsible." The court refused to allow Garcia's counsel to ask the juror whether there had ever been any question as to Spohn's liability.

Upon polling the second juror, the court allowed Garcia's counsel one question. He asked:

Do you know what would have happened if you had continued to discuss all the matters and continued to go over the records that were in evidence and discuss the testimony that had been adduced at trial? Do you know for certain what you yourself and all the other jurors would have eventually arrived at in terms of findings against the various defendants?

The juror responded that he thought everything would stay the same. At that point, the court overruled all further objections to his polling of the jurors and allowed no more questions from the attorneys. All twelve said they had found Spohn not liable.

With that, the court ordered the jury foreman to transfer the jury's verdict on Spohn Hospital's liability from the note to the actual jury verdict form. The court accepted the verdict as to Spohn Hospital, and declared a mistrial as to the other defendants.

The only basis for the liability of the hospital was its own negligence. There was no issue of agency by the other defendants acting for the hospital, *respondeat superior*, or the like, nor was there any cross action against the hospital seeking indemnity or contribution.

Garcia argues that the jury's verdict was insufficient upon which to base the take-nothing judgment against Spohn because it left material issues unanswered. We disagree.

■ The general rule is that a court must enter judgment on a verdict when it can be done. A party is entitled to judgment based on the answers given by the jury, if the unanswered questions are immaterial to recovery. *Powers v. Standard Accident Ins. Co.*, 144 Tex. 415, 191 S.W.2d 7 (1945). Issues are immaterial if they cannot alter the effect of the verdict or if they can be found elsewhere in the charge. *Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex.1986).

All of the cases reviewed,[1] save one,[2] that support this proposition are those involving only one plaintiff and one defendant. The issue is whether is the unanswered questions, if they would have been answered, would support a recovery against the defendant. That is, were the unanswered questions material to the hospital's liability? The answer is clearly "no."

■ An analogous situation would be when one defendant is favored by a summary judgment or directed verdict and the case proceeds to determination of the liability of the other defendants. If no verdict is reached, a take nothing judgment for the fortunate defendant, a severance, and a mistrial as to the remaining defendants is proper. *Garcia v. Willman*, 4 S.W.3d 307, 311 (Tex.App.—Corpus Christi 1999, no pet. h.) (trial court's order severing cause of action against joint tortfeasor upon granting summary judgment will only be reversed upon a showing of abuse of discretion).

■ A similar situation arises when the trial court grants a new trial as to one plaintiff and not to another, *e.g. State Department of Highways v. Cotner*, 845 S.W.2d 818 (Tex.1993) ( per curiam); or the appellate court reverses and remands

---

1. *Blakeney v. Natn'l Farm Life Ins. Co.*, 635 S.W.2d 218, 220 (Tex.App.—Waco 1982, writ ref'd n.r.e.); *Astec Industries, Inc. v. Suarez*, 921 S.W.2d 794 (Tex.App.—Ft.Worth 1996, no writ); *Anheuser–Busch v. Smith* 539 S.W.2d 234 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Masten v. Montgomery*, 501 S.W.2d 725 (Tex.Civ.App.—Amarillo 1973, no writ).

2. *Kroger Co. v. Hughes*, 616 S.W.2d 287, 288 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) (two defendants, but jury answered questions that defeated each cause of action against each defendant, although the jury was unable to answer other questions).

the entire judgment when only one losing party appeals, *e.g. Pat Baker Co. v. Wilson,* 971 S.W.2d 447 (Tex.1998) ( per curium). The rule is that a severance of the parties is proper when the causes of action are not so interwoven so they can be separated without unfairness to the parties.

■ The jury reached a unanimous decision that Spohn Hospital was not negligent and there were no material questions as to the hospital's liability that remained unanswered. The trial court did not err in granting a take nothing judgment for Spohn Hospital based on the partial verdict.[3] We overrule Garcia's second issue.

### Error in Impaneling the Jury

In her first issue Garcia contends that the trial court erred in impaneling the jurors. The first jury panel drawn for her trial was dismissed due to mistrial during voir dire. Because there was no new panel ready, the second panel was assembled from jurors that had appeared for jury duty on Monday but were released and placed on call because they were not needed for service at that time.

Nueces County has an electronic method of assembling jury lists. *See* Tex. Gov't.Code § 62.001 (Vernon 1998). Under this method, lists of persons eligible for jury service are created from a combined list of registered voters and holders of current, valid Texas driver's licenses. From those lists, each juror is assigned a computer-generated, randomly-assigned number, which are then listed in random order on an annual roll.

Each week, the venire panels are assembled by summoning the number of jurors needed from the annual roll in the order they appear on that roll. For example, if 500 jurors are needed during the first week after the annual roll is created, citizens assigned the first 500 numbers will be summoned for jury service. Thereafter people will be summoned in consecutive order as their numbers appear on the annual roll.

Once the prospective jurors have been summoned, assembled and generally qualified, they are divided into panels and sent to the courts requiring juries. The jurors are kept in numerical sequence according to their number on the annual roll. For example, if the first court on a given day calls for forty jurors, the panel sent to that court should consist of the first forty as their numbers appear on the annual roll, who have not been excused. Adhering to that sequence ensures the randomness built into the plan.

The practice that has developed in Nueces County is to place the prospective jurors that show up on Monday for jury duty but are not needed for any panel, along with the prospective jurors who arrived late, on a list called the "on-call" list. Those persons are allowed to leave after being summoned on Monday, with the understanding that they may be called back for service at a later time during that term. This is the process which was used to assemble the panel of jurors which ultimately decided Garcia's case.

Garcia contends that the practice of using the "on-call" list deviated from the Nueces County Plan, compromised the randomness of her jury panel, and was reasonably calculated to cause and probably did cause the rendition of an improper judgment. We disagree.

The court administrator testified that the panel was assembled by calling people on the telephone whose names appeared on the "on-call" list and summoning them back for jury duty. The list of persons was followed sequentially to the extent possible. However, gaps in the sequence were caused by the clerk's inability to reach some of the people on the list by telephone, and also by the fact that people

---

**3.** No issue is raised as to the propriety of the severance under Rule 41, and we do not address it.

who showed up late on Monday for jury duty were placed on the "on-call" list rather than being placed on panels according to their sequence since all the panels were already created by the time they arrived.

The Texas Government Code authorizes a county to adopt a plan for the selection of names of persons for jury service by using electronic or mechanical equipment instead of drawing names from a jury wheel. TEX. GOV'T.CODE ANN. §§ 62.001 et seq (Vernon 1998). A plan under this section must provide a fair, impartial, and objective method of selecting names of persons for jury service. Id. at § 62.011(b)(3). Interestingly, the word "random" is not used in the statute. Id.; see also Singleton v. State, 881 S.W.2d 207, 211–13 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that both challenges to the "fair cross-section" requirement and the randomness of the array must be supported by either a showing that the group actually was not a fair cross-section or that the fairness of the trial was compromised). The method adopted by Nueces County is consistent with the statutory requirements.

In a county that uses a mechanical or electronic method, the code does not provide specific instructions for summoning additional jurors for service when the court does not have a sufficient number of prospective jurors. See TEX. GOV'T.CODE ANN. at § 62.011(c). The only requirements of § 62.011(c) for that situation, other than the general requirement of a fair, impartial and objective method of selection, is that the method must either use the same record of names of persons for jury service until that record is exhausted or use the same record of names for a period of time specified by the plan. Id. at § 62.011(b)(3), § 62.011(b)(5). Also, the statute specifically authorizes the judge to adjourn all or part of a panel of jurors until a later date during the term. Id. at § 62.015(c). Garcia has not shown a violation of any of these statutes. The plan adopted by Nueces County does not provide specific directions either, but the practice of putting potential jury members on standby to be recalled if they are needed is not contrary to the spirit or requirements of the statutes or adopted plan.

■ Every citizen is entitled to a fair and impartial trial before an impartial jury, fairly representative of the community. Mendoza v. Ranger Ins. Co., 753 S.W.2d 779, 780 (Tex.App.—Fort Worth 1988, writ denied); Thiel v. Southern P. Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); Brooks v. Beto, 366 F.2d 1, 11 (5th Cir.1966), cert. denied, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135 (1967). However, the Texas Court of Criminal Appeals has held that a challenge to the array based on noncompliance with jury selection procedures requires a criminal defendant to show that such noncompliance compromised the fairness of his trial. See e.g. Cooks v. State, 844 S.W.2d 697, 726–27 (Tex.Crim.App.1992); Lewis v. State, 815 S.W.2d 560, 563 (Tex.Crim.App. 1991). Certainly, a civil litigant is not entitled to a presumption of harm if a criminal defendant is required to show harm to achieve reversal based on the same type of error. Compare TEX.R.APP. 44.1(a) (stating that no judgment in a civil case may be reversed on appeal due to an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment) with TEX.R.APP. P. 44.2(a) (stating that in a criminal case where there was constitutional error the conviction must be reversed unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment). With no showing of actual harm, no evidence that the jury pool did not represent a fair cross-section of the community, and no showing that the jury selection procedures resulted in a materially unfair trial, we cannot reverse this case. Since we hold that we cannot find that the error, if any, probably caused the rendition of an improper judgment, we overrule Garcia's

first point of error. *See* Tex.R.App. P. 44.1(a)(1).

### Omitted Jury Instruction

By her third issue, Garcia argues that the trial court erred by failing to instruct the jury that a hospital acts through its employees or agents. However, the record indicates that the court's charge, in fact, stated:

> You are instructed that a hospital such as Spohn Hospital acts by and through its nurses, employees and agents, and those acts are the acts of the hospital.

Garcia's third issue is overruled.

### Failure to Exclude Expert Testimony

By her fourth point of error, Garcia complains that the trial court improperly admitted testimony from Dr. Eric Comstock. Dr. Comstock was an expert in medical toxicology retained by Spohn's co-defendants, Drs. George Nelson and Todd Howell, and Texas Emergency Medical Services. His testimony, broadly speaking, was that the doctors who treated Garcia in the emergency room after she was released from Spohn adhered to the standard of care. At trial, he testified that Garcia did not take any Dilantin after she was released from Spohn Hospital. He concluded this from comparing the levels of Dilantin in her blood as reflected in her medical records from tests taken on June 11th and on July 1st. Garcia objected, contending that this opinion, although properly requested, was not properly disclosed or supplemented prior to trial.

Initially, we note that we tend to believe that those opinions should have been disclosed by the proponents of Dr. Comstock pursuant to former Tex.R. Civ. P. 166b. Parties should generally err on the side of disclosure. *See Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 303–05 (Tex.1993). However, we do not reach that issue because Garcia was not harmed vis a vis this defendant, Spohn Hospital, by Dr. Comstock's testimony. *See* Tex.R.App. P. 44.1(a)(1).

Assuming without deciding that the trial court erred by failing to exclude those opinions of Comstock's or to allow Garcia to present rebuttal testimony, in order to warrant reversal, those errors must have "probably caused the rendition of an improper judgment." *Id.* Dr. Comstock focused on explaining why Garcia developed Stevens–Johnson syndrome and why it was not diagnosed sooner. He concluded that the symptoms did not present themselves in time to effectively treat the syndrome. He testified that the emergency room doctors adhered to the standard of professional care in treating Garcia after her release, and that failing to diagnose the syndrome was not below the standard of care. He did not testify about Spohn's facilities or the supervision of its staff. He did not testify about Spohn's nurses. Garcia's entire case against Spohn was that Spohn's nurses and supervisors were negligent in keeping up the records regarding Garcia, communicating them to other departments of the hospital, and in failing to recognize that the physicians were negligent in treating her and take appropriate action. Dr. Comstock's testimony had nothing to do with any of those issues. In fact, Garcia has directed this court to no evidence at all that Spohn Hospital was negligent.

We hold that any error resulting from the trial court's failure to exclude the testimony of Dr. Comstock or refusing to allow Garcia to call an expert to rebut his testimony was harmless. Accordingly, we overrule Garcia's fourth point of error and AFFIRM the judgment of the trial court.